```
ANDRE BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
KERRY C. O'NEILL
Assistant United States Attorney (Cal. Bar No: 223852)
Criminal Appeals Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3289
     Facsimile: (213) 894-8513
     E-mail:    kerry.oneill@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>ROSI RAY,<br>　aka "Rose Ray,"<br>　aka "Gloria Lujan,"<br><br>　　　　Defendant. | No. CR 10-243-CJC<br><br>**SENTENCING POSITION FOR DEFENDANT ROSI RAY**<br><br>SENTENCING DATE: 7/2/12<br>SENTENCING TIME: 9 a.m. |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorney Kerry C. O'Neill, hereby files its sentencing position for defendant ROSI RAY.

//
//
//

The government's position regarding sentencing is based upon the attached memorandum of points and authorities, the files and records in this case, including the under-seal declaration of Kerry C. O'Neill filed concurrently herewith, the Presentence Report, and any other evidence or argument that the court may wish to consider at the time of sentencing.

DATED: June 19, 2012

Respectfully submitted,

ANDRE BIROTTÉ JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division


_____/s/_____
KERRY C. O'NEILL
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

On December 1, 2010, a grand jury indicted ROSI RAY ("defendant") on five counts of violating 18 U.S.C. §§ 1343 (Wire Fraud) for defrauding investors by falsely telling them that their investments with her would be used to purchase court-ordered monetary settlement annuities from accident victims at a discount, and promising them profits ranging anywhere from 10 to 200 percent. On September 13, 2011, defendant pleaded guilty to count one of the indictment.

The government respectfully requests that the Court adopt the following Sentencing Guidelines calculations as set forth in the plea agreement and Presentence Investigation Report ("PSR"):

| | | | |
|---|---|---|---|
| Base Offense Level | : | 7 | [USSG § 2B1.1(a)(1)(B)] |
| Loss | : | 18 | [USSG § 2B1.1(b)(1)(J)] |
| Over 50 victims | : | 4 | [USSG § 2B.1(b)(2)(B)] |
| Acceptance of Responsibility | : | -3 | [U.S.S.G. § 3E1.1(a), (b)] |

The total offense level is therefore 26.

### II. CRIMINAL HISTORY CALCULATION

The government agrees with the PSR's determination that defendant has no criminal history points arising from her October 3, 1977 conviction in the Central District of California for Missapplication of Funds of a Federal Credit Union because the conviction falls outside the time parameters governing the application of criminal history points. (PSR ¶ 39.) Similarly, the government agrees that defendant has no criminal history points arising from her 1987 conviction for felony Grand Theft

and Non-sufficient Funds because of the age of the conviction. (PSR ¶ 40.)

Defendant was also convicted in 1991 for felony Grand Theft by Embezzlement in state court and was released from custody for this conviction on July 16, 1992. (PSR ¶ 41.) At the time the probation office filed the PSR it did not have a specific date in 2007 on which defendant started the scheme at issue in this case. (PSR ¶ 41.) As a result, the probation office was unable to ascertain whether defendant started this scheme within 15 years of her 1992 release from custody, assessed this conviction no criminal history points, arrived at a Guidelines range of 63-78 months, and recommended a high-end sentence of 78 months (six and a half years). (PSR ¶ 41, 42.)

Although the indictment generally alleges that defendant's scheme started in 2007, the evidence -- including an FBI 302 from an early investor and the financial analysis defendant already stipulated to in essence by agreeing in the plea agreement with the government's restitution amount, loss range, and total amount defendant received from investors -- shows that the earliest investment made with defendant under this scheme occurred on May 9, 2007. (Declaration of Kerry C. O'Neill ("O'Neill Decl."), ¶ 1; Ex. 1.) An additional seven investors made investments with defendant between May 24, 2007 and July 13, 2007. (Id.) Therefore, this court can conclude that defendant started her most recent scheme within 15 years of defendant's release from custody on July 16, 1992 for her 1991 conviction. Because defendant's 1991 conviction resulted in a sentence of 16 months and falls within the 15 year time period set forth in USSG

§ 4A1.2(e)(1), defendant should be assessed three criminal history points. See also USSG § 4A1.1(a). This results in a Criminal History Category of II[1] for defendant and a Guidelines range of 70-87 months.

Taking this Guidelines range as a starting point, and weighing the 18 U.S.C. § 3553(a) factors, the government respectfully requests that this court impose a sentence of 84 months (seven years) for this defendant, a three-year period of supervised release, restitution in the amount of $4,538,370, and a special assessment of $100.

**III. RESTITUTION & A FINE**

The parties agreed in the plea agreement that the appropriate amount of restitution in this matter is $4,538,370. (Plea Agreement ¶ 6.) The probation office did not make a restitution recommendation because at the time it filed the PSR it did not have specific victim information. (PSR ¶ 90.) The government has since provided that information to the probation office and attaches it as Exhibits 2 and 5 to the O'Neill Declaration. (O'Neill Decl. ¶¶ 2, 5; Exs. 2, 5.) The government is specifically requesting, however, that the court not order restitution to S.C. for whom financial records show a loss

---

[1] In the plea agreement both parties agreed that "there is no agreement as to defendant's criminal history or criminal history category." (Plea Agreement ¶ 13.) Moreover, defendant agreed to waive appeal of, among other things, the "procedures and calculations used to determine and impose any portion of the sentence" provided that the "Court imposes a term of imprisonment within or below the range corresponding to an offense level of 26 and the criminal history category calculated by the Court." (Plea Agreement ¶ 17.) Therefore, it is the government's contention that even if this court finds that defendant falls within Criminal History Category II, she has waived her right to appeal that determination under the terms of the plea agreement.

5

between $1,084,000 and $1,053,000. (O'Neill Decl. ¶ 3, Exs. 2-3.) Based on the government's investigation and interviews of S.C., it appears that numerous investors invested with Rosi Ray through S.C. (O'Neill Decl. ¶ 4, Ex. 4.) Those investors who invested through S.C. lost $1,160,225. (O'Neill Decl. ¶ 5, Ex. 5.) Because the investors lost more through S.C. than S.C. lost through defendant, the government believes that S.C may have used some of the investor money for personal expenses. Therefore, the government requests that the court order restitution not to S.C., but to those individuals who lost money investing with defendant through S.C. (O'Neill Decl. ¶ 5, Ex. 5.)

The government does not have any indication that defendant can pay a fine in addition to restitution in this matter and is therefore not requesting one.

## IV. ANALYSIS OF THE SECTION 3553(a) FACTORS

The government believes that the factors set forth in 18 U.S.C. § 3553(a) support a sentence of 84 months (seven years), a three-year period of supervised release, restitution in the amount of $4,538,370, and a $100 special assessment.

### A. 18 U.S.C. § 3553(a)(1)

18 U.S.C. § 3553(a)(1) requires the Court to consider the nature and circumstances of the offense and the history and characteristics of defendant. The offense at issue is incredibly serious. For approximately two years, defendant ran a Ponzi scheme that resulted in her receipt of approximately $10,957,300 from approximately 190 investors. (PSR ¶ 12.) Of those 190 investors, approximately 100 lost money with defendant. (PSR

6

¶ 20.) In person, by phone, and through others, defendant knowingly and falsely told investors that their investments with her would be used to purchase court-ordered monetary settlement annuities from accident victims at a discount, which settlement annuities would then be cashed in at a substantial profit with returns ranging anywhere from 10 to 200 percent over a period of two to twelve months. (PSR ¶ 13; O'Neill Decl. ¶ 6, Ex. 6 (memorandums of interview of the four victims upon which counts 1-5 of the indictment are based).) Defendant did not, however, purchase, and did not intend to purchase, such settlement annuities at a discount or at all. (PSR ¶ 14.) Instead, the payments she made to some victims over the course of her scheme were Ponzi payments that came from the victims' own or other victims' principal investments, and not from any profit or legitimate return on investment. (PSR ¶ 15.)

The loss to defendant's victims amounts, conservatively, to $4,538,370. (PSR ¶¶ 17-18.) As shown by the attached four vicitm impact statements, defendant's victims have suffered as a result of defendant's scheme. (O'Neill Decl. ¶¶ 7-10, Exs. 7-10.) For example, M.R. lost $150,000 through defendant's scheme. (Ex. 7.) In her statement to the court she sets forth that when she met defendant, defendant "seemed very convincing and trustworthy" and that she made an initial investment of $150,000 with a promised return of $300,000. (Id.) M.R.'s $150,000 investment was acquired from a home equity loan. (Id.) When the

"pay off date" arrived all M.R. received were "excuses after excuses" and she never received her money back. M.R. writes that since becoming a victim of defendant "I have lost stability and my source of income. My home is now in foreclosure and I will be evicted from my home of thirty seven years at any time." She continues: "Please, I beg of you to do what is right as my future is at stake. I have been a stay home mom for many years using the rent from my property as income, I do not have a retirement plan or have the money to hire a good lawyer to help me in this case." (Id.) M.R. asks for "justice to be served. This lady cannot continue to create dreams of humble people under false pretense." (Id.)

Victim J.A. invested with defendant and lost over $200,000. (O'Neill Decl. Ex. 5.) She writes to the court that defendant "stole this hard earned money through a Ponzi scheme." (O'Neill Decl. Ex. 8.) J.A. writes that because of defendant's "actions, I have suffered from anxiety and am on daily medication." (Id.) She explains that "[w]e saved our money and planned to buy our first dream home and still have a nest egg for the future. Because of her actions we were not able to purchase the home of our dreams or have the nest egg we needed this past year when I became very ill." (Id.) In conclusion she asks the court to "[p]lease do not offer leniency when sentencing [defendant]. She is a cold hearted thief and liar who cares nothing about anyone but herself. She stole our money and our peace of mind." The

two additional victim impact statements at Exhibits 9 and 10 of the O'Neill declaration speak for themselves.

With regard to the history and characteristics of the defendant, this defendant has the primary aggravating factor that this is not the first financial crime for which she has been convicted. (PSR ¶¶ 39-41.) Defendant was previously convicted in federal and state courts of (1) misapplication of funds; (2) non-sufficient funds and grand theft; and (3) grand theft by embezzlement. (Id.) For these convictions, she received sentences of five years' summary probation, and 52 and 16 months in state prison, respectively. (Id.) Clearly, the deterrent effect of those sentences was not sufficiently long-lasting to prevent defendant from committing this crime. (See PSR recommendation letter.) Moreover, with the instant offense, defendant has committed her most serious and brazen crime to date, stealing millions of dollars from individual investors she recruited through the phone, in person, and through others. As the probation office states in its recommendation letter, defendant's "criminal history does reflect a long-standing pattern of predatory financial behavior that is of significant concern, especially in light of the instant offense.

Additionally in aggravation is the fact that defendant clearly had other means of making money besides defrauding her community. Specifically, she has managed retail stores in both

Los Angeles and Orange County. (PSR ¶¶ 58-60.)

In mitigation, defendant's ex-husband is recuperating from a severe stroke and defendant is caring for him. (PSR ¶ 49.) Defendant told the probation office that their son could not care for his father because of his employment, and that her ex-husband's sister is limited in how much care she can offer him. (Id.) While undoubtedly the health of defendant's ex-husband is unforuntate, this mitigating circumstance does not appear to outweigh the seriousness of the offense and the factors in aggravation here.

Therefore, the government believes that a sentence of 84 months is a sufficient and fair punishment that takes into account both the aggravating and mitigating factors regarding this defendant's criminal conduct, history, and personal circumstances.

B. <u>18 U.S.C. § 3553(a)(2)</u>

18 U.S.C. § 3553(a)(2) requires the court to consider the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of defendant, and to provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. This factor also supports the government's request for a sentence of 84 months. The government respectfully

submits that the recommended sentence will appropriately promote respect for the law and will deter future criminal conduct from both the defendant and others without being greater punishment than necessary.

C. <u>18 U.S.C. § 3553(a)(6)</u>

18 U.S.C. § 3553(a)(6) requires the court to minimize sentencing disparity among similarly situated defendants. Using the Sentencing Guidelines to sentence defendant accomplishes this goal. Variation from the Guidelines range necessarily increases sentencing disparity among similarly situated defendants.

The government's recommended sentence is a Guideline sentence and thus reduces the potential for disparity among similarly situated defendants.

D. <u>THE REMAINING 3553(a) FACTORS ALSO SUPPORT THE SENTENCE REQUESTED BY THE GOVERNMENT</u>

18 U.S.C. § 3553(a)(3) requires the court to consider the kinds of sentences available. 18 U.S.C. § 3553(a)(4) & (5) now merely require the court to take the sentencing Guidelines as "advisory." Finally, 18 U.S.C. § 3553(a)(7) requires the court to consider restitution. That issue has been addressed in Section III.

V. CONCLUSION

For all foregoing reasons, the government reaffirms the Guidelines calculations to which it agreed in the plea agreement and asks this court to place defendant in Criminal History Category II, find the Guidelines range to be 70-87 months, and

sentence defendant to 84 months (seven years) of imprisonment, three years of supervised release, restitution in the amount of $4,538,370 and a special assessment of $100.

DATED: June 19, 2010

Respectfully submitted,
ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

\_\_\_\_/s/_____
KERRY C. O'NEILL
Assistant United States Attorney
Criminal Appeals Section