ANDRE BIROTTÉ JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
KERRY C. O'NEILL
Assistant United States Attorney (Cal. Bar No: 223852)
Criminal Appeals Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3289
    Facsimile: (213) 894-8513
    E-mail:   kerry.oneill@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 10-243-CJC |
| Plaintiff, | <u>SUPPLEMENTAL SENTENCING POSITION FOR DEFENDANT ROSI RAY</u> |
| v. | |
| ROSI RAY,<br>  aka "Rose Ray,"<br>  aka "Gloria Lujan," | SENTENCING DATE: 7/2/12<br>SENTENCING TIME: 9 a.m. |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorney Kerry C. O'Neill, hereby files its supplemental sentencing position for defendant ROSI RAY.

//
//
//

The government's position regarding sentencing is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Report, and any other evidence or argument that the court may wish to consider at the time of sentencing.

DATED: June 28, 2012

Respectfully submitted,

ANDRE BIROTTÉ JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

_____/s/_____
KERRY C. O'NEILL
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

**MEMORANDUM OF POINTS AND AUTHORITIES**

The government hereby responds to defendant's sentencing brief filed on June 21, 2012, and its opposition to the government's sentencing position filed on June 25, 2012. The government incorporates the arguments it previously made in its sentencing position papers, as well as its various responses and oppositions to defendant's <u>ex parte</u> requests to continue sentencing.

**1.  The Loss Amount**

Defendant does not contest the loss amount in this case or the total offense level of 26. Nonetheless, defendant discusses the loss amount in her position papers. Contrary to what defendant states, however, the PSR <u>does not</u> indicate that 90% of the investors received more than they invested. (6/21/2012 Sentencing Brief at 8.) Instead, the PSR states that "[a]pproximately 90 of the investors received greater amounts of money than they invested, that is, they received back their principal investment, plus they received excess gains from the scheme." (PSR ¶ 17.) The PSR continues to point out that "more than 100 investors suffered actual losses in the scheme." (<u>Id.</u>). Defendant's assertion that only 10% of the investors lost money is therefore incorrect.

Moreover, both USSG § 2B1.1, comment n.3(F)(iv) and <u>United States v. Van Alstyne</u>, 584 F.3d 803, 817 (9th Cir. 2009) make clear that in Ponzi scheme cases, "loss shall not be reduced by the money or value of the property transferred to any individual investor in the scheme in excess of that investor's principal investment (i.e., the gain to an individual investor in the

scheme shall not be used to offset the loss to another individual investor in the scheme)." The government undertook that precise analysis in its loss calculation, as the Court can see in Exhibit 2 to the government's sentencing position. Specifically, the government credited against the loss amount any Ponzi payments defendant made up to the amount the investors invested. If defendant made payments beyond the amount invested by a particular defendant, then that investor's loss was tallied by the government as zero and defendant did not receive credit for the amount she overpaid that victim. (See e.g. Exhibit 2, page 1 of 7, victim O.B.) For victims who invested more than they received back from defendant, the government included the difference between what they paid and what they received as the investor loss. (See e.g., Exhibit 2, page 7 of 7, victim A.V.) After tallying the investor loss in this manner, the government reached a total investor loss figure of $5,305,965, subtracted approximately $767,595 from that amount for various conservative reasons, and arrived at a total loss amount of $4,538,370. (See e.g., Exhibit 2, page 7 of 7.)

**2.  Criminal History**

Defendant does not contest that her crime started within 15 years of her release from custody on her 1991 conviction for felony Grand Theft and thus the Court should properly calculate her Guidelines range as 70-87 months because she falls within Criminal History category II. While defendant argues that this unfairly increases her Guidelines range from 63-78 months to 70-87 months, the government argues that this Criminal History category more fairly captures defendant's lengthy criminal

4

history. Moreover, the government is not recommending the high-end of the new Guidelines range. Rather it is recommending a sentence of 84 months, only 6 months more than the high-end of the range initially proposed by the PSR.

**3.  Booker Factors**

Defendant argues that even if her proffered mitigating factors (difficult childhood, ex-husband's health, and extreme acceptance and remorse) are not proper under the Guidelines, they are proper under Booker. While it is true that this Court may consider all of these factors, the government argues that none of these factors merit a downward variance from the government's previously requested sentence of 84 months of incarceration. Specifically, defendant's childhood, while not described as ideal, is hardly the type of atypical childhood the court considered in granting a departure in United States v. B.Roe, 976 F.2d 1216, 1218 (9th Cir. 1992), a case upon which defendant relies. In B.Roe, the defendant was "savagely" beaten, "raped and sodomized," and "forced to lay naked on the steps while [defendant's mother's boyfriend" urinated in her mouth." Id.

As regards the health of defendant's ex-husband, the government has already expressed its regret at the unfortunate circumstances, but defendant is clearly not the sole caretaker of her ex-husband and thus should not be allowed to escape incarceration because of the poor health of her husband. As this Court's minute order on June 22, 2012 states, "[d]efendant has not shown that she is providing critical care to her ex-husband 24 hours a day, seven days a week. Indeed, Defendant admits that she is managing a store during a portion of the day." While

5

1  defendant argues that she must not be incarcerated so that she
2  can continue to run her store and pay for her husband's health
3  care, defendant's argument that she is the <u>only</u> person who can
4  successfully run a consignment store cannot be credited.
5  Moreover, defendant could have taken the time from when she
6  pleaded guilty in September 2011 until now to train somebody to
7  run the store.  She did not, and now, instead, relies on this
8  argument to request a downward variance the Court should not
9  grant.
10      Lastly, while defendant has accepted responsibility and
11 expressed remorse, there is nothing "extreme" about either of
12 these facts that merits a downward variance.  The cases defendant
13 relies on do not support defendant's claim here that her remorse
14 acceptance of responsibility were "substantially greater than
15 that contemplated by the Commission."  <u>United States v. Miller</u>,
16 991 F.2d 552 (9th Cir. 1993).  <u>Cf.</u> <u>United States v. Farrier</u>, 948
17 F.2d 1125, 1127 (9th Cir. 1991) (suggesting that defendant's
18 admission of guilt in other crimes may have been considered by
19 the district court as acceptance greater than that contemplated
20 by the guidelines.)
21 //
22 //
23 //

6

**4.   Conclusion**

For all the foregoing reasons, the government reaffirms the Guidelines calculations to which it agreed in the plea agreement and asks this court to place defendant in Criminal History Category II, find the Guidelines range to be 70-87 months, and sentence defendant to 84 months (seven years) of imprisonment, three years of supervised release, restitution in the amount of $4,538,370 and a special assessment of $100.

DATED: June 28, 2012                Respectfully submitted,
                                    ANDRÉ BIROTTÉ JR.
                                    United States Attorney

                                    ROBERT E. DUGDALE
                                    Assistant United States Attorney
                                    Chief, Criminal Division

                                       /s/
                                    KERRY C. O'NEILL
                                    Assistant United States Attorney
                                    Criminal Appeals Section